

**SIGNED this 20th day of April, 2012**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

ROGER A. MORGAN, and                                     No. 11-15547
CHRISTI R. MORGAN                                         Chapter 7

       Debtors;

JACKIE HUMPHREY,

       Plaintiff,

v.                                                        Adversary Proceeding
                                                          No. 12-1006

ROGER A. MORGAN, and
CHRISTI R. MORGAN

       Defendants.

## MEMORANDUM

    The defendants Christi R. Morgan and Roger A. Morgan ("Defendants" or "Debtors")

move to dismiss the plaintiff Jackie Humphrey's complaint. [Doc. No. 11].[1] In response to the motion to dismiss, the plaintiff Jackie Humphrey ("Plaintiff") filed an amended complaint ("Amended Complaint"). [Doc. No. 12, Amended Complaint].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law. The court will GRANT Mr. Morgan's motion to dismiss the claims brought under 11 U.S.C. § 523 and will DENY the motion with respect to the claim against him brought under 11 U.S.C. § 727(a)(4). The court will GRANT the motion of Mrs. Morgan to dismiss the complaint because the Plaintiff's claims against her are now moot. She has previously waived her discharge. Therefore, the Plaintiff's claims against Mrs. Morgan are non-dischargeable pursuant to Mrs. Morgan's waiver of her discharge. The court's ruling is based on the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## I. Background

The Debtors filed their Chapter 7 voluntary bankruptcy petition on October 5, 2011. [Bankr. Case No. 11-15547, Doc. No. 1]. The Plaintiff filed her complaint on January 17, 2011. [Doc. No. 1]. On January 19, 2012 the Debtor Christi Morgan filed a waiver of discharge and a motion for an agreed order to approve the written waiver of discharge. [Bankr. Case No. 11-15547, Doc. Nos. 54, 54-1]. This court granted the motion on January 20, 2012. [Bankr. Case No. 11-15547, Doc. No. 60]. The Plaintiff filed the Amended Complaint on March 5, 2012 in response to the Debtors' motion to dismiss. [Doc. No. 12].

In the Amended Complaint the Plaintiff alleges that the Debtors have embezzled money from her, have made false representations or acted under false pretenses, and have concealed

---

[1] All citations to the court's docket entries are for the docket pertaining to Adversary Proceeding 12-1006, unless otherwise noted.

assets on their bankruptcy schedules. The Amended Complaint includes several exhibits that explain the Plaintiff's claims in detail. The allegations begin with a General Power of Attorney ("POA") that the Plaintiff signed on May 2, 2008 that appointed the Debtor Christi Morgan a lawful agent and limited attorney-in-fact for the Plaintiff. [Doc. No. 12-2, POA, Ex. B to Amended Complaint]. The POA granted extensive rights and powers to act on behalf of the Plaintiff "in all business and financial matters whatsoever." *Id.* A sampling of the broad scope of the rights provided in the POA include the authority:

> 4. To deposit in my name and in any bank or banks any and all moneys collected or received; to endorse notes, checks, drafts, or bills of exchange which may require any endorsement for deposit as cash or for collection; to make withdrawals from and to draw checks upon any and all bank accounts to the same extent that I myself am or would be entitled to make withdrawals or checks; and for the protection of said bank or banks, I do hereby agree that this General Power of Attorney shall be and remain in full force and effect until revoked by me upon written notice to such bank or banks; . . .
>
> 7. To bargain, sell, grant and convey to such person or persons, and for such sum or sums of money or other consideration or considerations, for my advantage and profit, any and all real property owned by me or which may become owned by me, and in pursuance thereof, to execute all necessary or desirable bills of sale, deeds, mortgages, deeds to secure debt, or any other instruments; . . .
>
> 8. To borrow upon the security of any of my real property any sum of money, and to sign, seal and deliver as collateral thereto, a mortgage or lien as a deed to secure debt upon any of my real estate in question with the usual provisions and covenants; . . .
>
> 14. To borrow money for me, and in pursuance thereof, to execute notes or other evidences of indebtedness, and to pledge, mortgage, or otherwise hypothecate any of my property, real, personal or mixed, and to do all other acts and things necessary or desirable in connection therewith, and to lend money for me, . . .
>
> 17. Make gifts, grants, or other transfers without consideration to or for the benefit of descendants of the principal or a charitable institution, . . .
>
> 18. And to do, execute, and perform any and all other act or acts, thing or things, in law needful and necessary to be done, as fully, completely and amply, to all intents and purposes whatsoever as I might or could do if acting personally, and I

> hereby ratify and confirm all lawful acts done by my said attorney or attorneys in virtue thereof with full power of substitution; . . . .

*Id.*, ¶¶ 4, 7, 8, 14, 17, 18.

At the time the Plaintiff signed the POA, Christi Morgan also signed an Acceptance of Appointment in which she acknowledged in part:

> I owe a duty of loyalty and good faith to the Principal, and must use the powers granted to me only for the benefit of the Principal.
> I must keep the Principal's funds and other assets separate and apart from my funds and other assets and titled in the name of the Principal. I must not transfer title to any of the Principal's funds or other assets into my name alone. . . .
> I must protect, conserve, and exercise prudence and caution in my dealings with the Principal's funds and other assets.
> I must keep a full and accurate record of my acts, receipts, and disbursements on behalf of the Principal, and be ready to account to the Principal for such acts, receipts, and disbursements at all times. . . .

[Doc. No. 12-2, Ex. B to Amended Complaint, p. 5]. Mr. Morgan is not mentioned in either the POA or the Acceptance of Appointment. His signature is not included on the document. There are no allegations that he made these or similar representations to the Plaintiff in writing or verbally at any time.

The Amended Complaint alleges that on November 2, 2010 Ms. Humphrey's Annuity Account at Liberty National Life Insurance, a subsidiary of Torchmark Corporation, received a request for withdrawal of $212,538.07. Amended Complaint, ¶ 8(b); [Doc. No. 12-3, Ex. C to Amended Complaint]. Early withdrawal fees on the account reduced the total amount from $212,538.07 to $199,997.66. Amended Complaint, ¶ 8(c). There is no allegation that Mr. Morgan made this request or suggested, directed, or collaborated with his wife in making this request.

The Amended Complaint further asserts that as of November 2, 2010 the Debtors had a bank account balance with Wells Fargo in the amount of $736.67. *See* [Doc. No. 12-4, Ex. D to

Amended Complaint]. The Debtors' bank statement from October 23, 2010 to November 4, 2010 reveals that the account received a deposit of $199,997.66 on November 3, 2010. *See id.* It appears that Mrs. Morgan withdrew these funds from Plaintiff's account and deposited them into her joint banking account with Mr. Morgan. The record further indicates that on the same date, November 3rd, Mrs. Morgan withdrew $165,540.54 from the account. *Id.*; [Doc. No. 12-5, Ex. E to Amended Complaint, p. 2]. It demonstrates that Mrs. Morgan received a cashier's check in the amount of $165,540.54 that day. [Doc. No. 12-5, Ex. E to Amended Complaint, p. 1].

Mrs. Morgan used the cashier's check to purchase real property located at 380 Jill Lane, Chickamauga, Georgia on November 3, 2010. *See* [Doc. No. 12-6, Ex. F to Amended Complaint, Settlement Statement]. The Settlement Statement indicates that only Mrs. Morgan was the buyer of the property. *Id.* The Plaintiff alleges that the "parties intended that the property would later be put in Roger Morgan's name as well," but there is no exhibit filed with the Amended Complaint that gives support for this statement. Amended Complaint, ¶ 8(f). There is also no specific statement or act by either Mr. or Mrs. Morgan alleged which would provide direct or circumstantial evidence of this intent.

Before the Debtors filed their bankruptcy petition, the Plaintiff initiated a state court proceeding in the Superior Court of Walker County, Georgia entitled *Jackie Humphrey v. Christi Morgan*, Case No. 2011-SU-CV-0940. Mr. Morgan was not named as a defendant in that action. The superior court entered an ex parte order on July 30, 2011 that ordered, in part:

1. That all assets of the Plaintiff, whether titled individually or jointly in the name of Jackie Mae Humphrey, whether in bank accounts, real property, Trust, or any other form, be frozen to stop any and all transactions, withdrawals or activity on these accounts until a hearing can be had . . .

3. That all assets of the Defendant, Christi Morgan, be frozen to stop any and all transactions, withdrawals or activity on these accounts until a hearing

>   can be had on this Ex Parte Order, effective immediately; this includes but is not limited to, any financial accounts, real property, or any other asset, whether titled individually or jointly in Defendant's name . . . .
>
>   4.  That the Defendant be enjoined, prohibited and restrained from altering, disposing, liquidating or transferring title to any Trust assets in which she was a Trustee, or to any personally held assets or property, especially including any property purchased in the last four years by the Defendant, including the property located at 380 Jill Lane, Chickamauga, Georgia, pending a resolution of this matter. . . .

[Doc. No. 12-1, Ex. A to Amended Complaint]. Following the entry of the ex parte order, the Plaintiff filed a verified complaint in the Walker County Superior Court alleging breach of trust, breach of fiduciary duty, and fraud against Christi Morgan. Amended Complaint, ¶ 7.

>   With respect to the Plaintiff's claims against Mr. Morgan, the Plaintiff alleges:
>
>   Mr. Morgan knew that Christi Morgan was the Power of Attorney for Ms. Humphrey. Upon information and belief, from December 2008 thru August 2011, over $800,000 was improperly transferred from Ms. Humphrey's accounts and deposited into the Debtors' joint bank account. From this joint bank account, the Debtors used Ms. Humphrey's funds to pay for their personal living expenses, including numerous family vacations to Florida and Gatlinburg, furniture, exorbitant amounts of food, and renovations to their home. Furthermore, Debtors transferred over $50,000.00 of Ms. Humphrey's funds to their children. . . .
>
>   The amount of money spent by Debtors from their joint account is substantially more than the amount of income reported by Debtors in their bankruptcy petition or their tax returns. Debtors knew that they were using Ms. Humphrey's funds to pay for their personal living expenses and to transfer to their family members.
>
>   Therefore, Mr. and Mrs. Morgan benefited from the funds improperly withdrawn from Ms. Humphrey's accounts. The Debtors acted with intent against Ms. Humphrey, Ms. Humphrey justifiably relied on the Debtors, and as a result, Ms. Humphrey has suffered a loss of over $1,000,000.00.
>
>   Ms. Morgan also sold Ms. Humphrey's home at 3476 Trion Teloga Road, Trion, Georgia, without her knowledge or consent. . . .

Amended Complaint, ¶¶ 10-13.

>   The Plaintiff asks this court to find the Debtors' debt owed to her nondischargeable

pursuant to 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(4). The Plaintiff further requests a denial of the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(4) due to her allegation that the Debtors knowingly and fraudulently made a false oath or account on their bankruptcy schedules. She asserts that the Debtors failed to "list over $500,000 in income during the two years prior to the bankruptcy petition, and failed to list the amount actually transferred to their children in the one year preceding the bankruptcy petition." Amended Complaint, ¶ 16.

The Debtor Christi Morgan has already waived her discharge in her bankruptcy case; therefore, the debt that Mrs. Morgan owes to the Plaintiff will not be discharged. The court concludes that to the extent this motion seeks to dismiss the claims against Mrs. Morgan, it should be granted because the Plaintiff's claims against her are now moot. Mrs. Morgan has already agreed to the relief that the Plaintiff seeks. For purposes of this motion to dismiss, therefore, the court will address only whether the Plaintiff's claims against Mr. Morgan should be dismissed.

## II. Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil Procedure 12(b) applies to adversary proceedings. *See* Fed. R. Bankr. P. 7012(b). Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 122 S.Ct. 992, 996 n.1 (2002), *overruled in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower v. Federal Express Corp.*, 96 F.3d

200, 203 (6th Cir. 1996)(citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969. The complaint " 'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.' " *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

### III. Analysis

11 U.S.C. § 1328 states in relevant part:

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt – . . .
> (2) of the kind specified in section 507(a)(8)(C)) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a); . . .

11 U.S.C. § 1328(a)(2).

> 11 U.S.C. § 523(a)(2) and (a)(4) in turn state in relevant part:

> A discharge under section ...1328(b) of this title does not discharge an individual debtor from any debt – . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . .

11 U.S.C. § 523(a)(2)-(a)(4). The creditor must prove by a preponderance of the evidence that a debt is nondischargeable under 11 U.S.C. § 523. *See Grogan v. Garner*, 498 U.S. 279, 287, 111

Page 8

S.Ct. 654, 659 (1991). In addition, "exceptions to discharge are to be strictly construed against the creditor." *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

### A.     Discharge Pursuant to 11 U.S.C. § 523(a)(2)

11 U.S.C. § 523(a)(2)(A) prohibits discharges of debt based on "(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . ." The Sixth Circuit has held that to demonstrate nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), a creditor must prove four elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert*, 141 F.3d at 280-81. A creditor bears the burden of demonstrating these elements by a preponderance of the evidence. *Id.* at 281 (relying on *Grogan*, 498 U.S. at 291, 111 S.Ct. at 661). Further, justifiable reliance is a subjective standard. *In re Rembert*, 141 F.3d at 280, n.2. In addition, "the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." *Id.* at 281.

In *In re Vitanovich* the Sixth Circuit Bankruptcy Appellate Panel addressed the meaning of "actual fraud" within the context of § 523(a)(2)(A):

> We adopt the position of the Court of Appeals for the Seventh Circuit that actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions. When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code.

*Mellon Bank v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) (citing *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000)). The Sixth Circuit Bankruptcy

Page 9

Appellate Panel made clear that it finds that "actual fraud" is broader than a misrepresentation and encompasses "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *In re Vitanovich*, 259 B.R. at 877 (citing *McClellan*, 217 F.3d at 893). The Sixth Circuit Bankruptcy Appellate Panel further explained that:

> "Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud."

*In re Vitanovich*, 259 B.R. at 877 (quoting *Gerad v. Cole (In re Cole)*, 164 B.R. 951, 953 (Bankr. N.D. Ohio 1993)) (other quotation omitted).

> In addition, as this court noted in *FIA Card Servs. v. Mueller (In re Mueller)*,
>
> Federal Rule of Civil Procedure 9(b), applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7009, requires that allegations of fraud must be pled with particularity. *See* Fed.R.Civ.P. 9(b). This requirement includes allegations of fraud made pursuant to 11 U.S.C. § 523(a)(2)(A). Courts in this Circuit have explained that " '[t]o satisfy Fed.R.Civ.P. 9(b), a plaintiff must at a minimum allege the *time, place and contents of the misrepresentation(s)* upon which he relied.' "

No. 11-1126, 2012 WL 32570, at *4 (Bankr. E.D. Tenn. Jan. 6, 2012) (citing *MBNA America Bank, N.A. v. Henning (In re Henning)*, 309 B.R. 508, 515 (Bankr. W.D. Mich. 2004) and quoting *Matter of Dunlevy*, 75 B.R. 914 (Bankr. S.D. Ohio 1987) and *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)).

In reviewing the Amended Complaint, it is clear that the Plaintiff alleges enough facts to state a Section 523(a)(2) nondischargeability claim against Christi Morgan. However, as noted *supra*, Christi Morgan has agreed to waive her discharge. The question the court must address is whether the Plaintiff's Amended Complaint alleges enough facts regarding Mr. Morgan's

actions to survive a motion to dismiss the 11 U.S.C. § 523(a)(2) claim against him.

The exhibits filed with the Amended Complaint reveal that the Plaintiff filed the Walker County Superior Court action against Mrs. Morgan alone. The ex parte order only applies to Mrs. Morgan; however, the order freezes her assets, as well as any assets held jointly with Mr. Morgan. *See* [Doc. No. 12-1, Ex. A to Amended Complaint]. The POA provided only Mrs. Morgan with control over the Plaintiff's financial affairs, and only Mrs. Morgan signed the Acceptance of Appointment. The withdrawal slip from the Debtors' joint account at Wells Fargo indicates that only Mrs. Morgan withdrew the $165,540.54. *See* [Doc. No. 12-5, Ex. E to the Amended Complaint]. In addition, the Settlement Statement pertaining to the property on Jill Lane in Chickamauga, Georgia, lists only Mrs. Morgan as the buyer of the property. [Doc. No. 12-6, Ex. F to the Amended Complaint]. There are no allegations of any conduct by Mr. Morgan which induced Ms. Humphrey to part with any property.

The exhibits do indicate that Mr. Morgan benefited from the deposit of the Plaintiff's funds in his joint checking account with Mrs. Morgan, but there are no allegations regarding the false pretenses or false representations he made to the Plaintiff as required to support her Section 523(a)(2) claim. There is no allegation that he collaborated with Mrs. Morgan in planning or executing the fraudulent actions. The Plaintiff alleges that the parties intended to put the Jill Lane property into Mr. Morgan's name at some later date, but there is no specific act or statement by either Debtor to support this claim. Further, satisfaction of Fed. R. Civ. P. 9(b) requires that the time, place, and contents of the misrepresentation be alleged. *See In re Mueller*, 2012 WL 32570 at *4. The court concludes that the Plaintiff has not satisfied the requirements of alleging that Mr. Morgan made a false representation to Ms. Humphrey or committed fraud in conjunction with his wife that is sufficient to meet the requirements of Rule 9(b). Therefore, her

claim against Mr. Morgan pursuant to 11 U.S.C. § 523(a)(2) will be DISMISSED without prejudice.

### B.    Discharge Pursuant to 11 U.S.C. § 523(a)(4)

11 U.S.C. § 523(a)(4) precludes a discharge for debts incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . ." 11 U.S.C. § 523(a)(4). Federal common law, rather than state law, defines these terms. *See Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996), *abrogated on other grounds as explained in National Development Servs. v. Denbleyker (In re Denbleyker)*, 251 B.R. 891 (Bankr. D. Colo. 2000). The Amended Complaint claims the Debtors "embezzled monies from Ms. Humphrey while acting in a fiduciary capacity." [Doc. No. 12, Amended Complaint, at p. 6]. Larceny was not alleged.

#### 1.    Fraud or Defalcation by a Fiduciary

In *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)* the Sixth Circuit discussed the fraud or defalcation exception in § 523(a)(4). 397 F.3d 386 (6th Cir. 2005). The term "defalcation" "encompass[es] embezzlement and misappropriation by a fiduciary, as well as the 'failure to properly account for such funds.'" *Id.* at 390 (quoting *In re Interstate Agency*, 760 F.2d at 125). To state a claim for defalcation under § 523(a)(4) the Sixth Circuit requires "proof by a preponderance of the evidence of the following: (1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *In re Blaszak*, 397 F.3d at 390.

When determining whether a fiduciary relationship exists for purposes of § 523(a)(4), the Sixth Circuit has cautioned:

> This Court construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances. For example, in *In re Garver*, we explicitly considered "the

> nature of the fiduciary relationship required under the defalcation provision of § 523(a)(4)," and held that § 523(a)(4) applied to trustees who misappropriate funds held in trust, and not to those who fail to meet an obligation under a common law fiduciary relationship. . . .
>
> Although an ordinary agency-principal relationship can involve fiduciary duties, *In re Interstate* holds that an agent-principal relationship standing alone is insufficient to establish the type of fiduciary duty contemplated by § 523. In addition, to satisfy § 523(a)(4) in the context of a defalcation, the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4).

*Id.* at 391.

In addition, § 523(a)(4) requires that "the fiduciary relationship turn on the existence of a pre-existing express or technical trust whose res encompasses the property at issue." *In re Blaszak*, 397 F.3d at 391. In *In re Blaszak* the Sixth Circuit explained that: "[f]our requirements are necessary to establish the existence of an express or technical trust: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Id.* The court concludes that although the Plaintiff has sufficiently alleged that Mrs. Morgan had a fiduciary relationship with the Plaintiff, the Amended Complaint does not allege such a relationship existed between her and Mr. Morgan. He is not a party to the POA nor the accompanying Acceptance of Appointment. There are no allegations regarding a technical trust. For these reasons, the Plaintiff has failed to state a claim of nondischargability based on fraud or defalcation by a fiduciary.

### 2. Embezzlement

The Sixth Circuit has explained that:

> [f]ederal law defines "embezzlement" under section 523(a)(4) as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.

*In re Brady*, 101 F.3d at 1172-73 (quoting *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982) and *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295 (1895)) and (citing *Ball v. McDowell (In re McDowell)*, 162 B.R. 136, 140 (Bankr. N.D. Ohio 1993)). To demonstrate embezzlement a creditor must prove all three elements: "(1) 'that he entrusted his property to the debtor,' (2) that 'the debtor appropriated the property for a use other than that for which it was entrusted,' and (3) that 'the circumstances indicate fraud.'" *Cash America Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) (quoting *In re Brady*, 101 F.3d at 1173). With respect to the third element, the Sixth Circuit has noted:

> The "fraud" required under § 523(a)(4) is "fraud in fact, involving moral turpitude or *intentional* wrong." Accordingly, embezzlement claims under § 523(a)(4) require "proof of the debtor's fraudulent intent in taking the [creditor's] property." As the *Brady* definition suggests, the debtor's fraudulent intent may often be shown by circumstantial evidence.

*In re Fox*, 370 B.R. at 116 (quotations and citations omitted).

In *In re Fox* the Sixth Circuit Bankruptcy Appellate Panel provided helpful guidance regarding the analysis of what is required to prove fraudulent intent for purposes of embezzlement under 11 U.S.C. § 523(a)(4):

> By requiring the Appellant to prove the elements of misrepresentational fraud in support of its embezzlement claim, the bankruptcy court imposed an overly restrictive definition of "circumstances indicating fraud." Fraud comes in many sizes, shapes, and shades of gray. In other contexts, courts have defined "fraud" as "encompass[ing] 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" Under this broad definition, a creditor may establish circumstances indicating a debtor's fraudulent intent, even if the debtor did not make a misrepresentation or misleading omission on which the creditor relied.
>
> This is not to say that a debtor's misrepresentations or omissions are irrelevant to the embezzlement analysis. To the contrary, misrepresentations, omissions, or other concealment of a debtor's actions regarding a creditor's property are important circumstances that might pierce the shadows to illuminate a debtor's fraudulent intent.

> On the other hand, a debtor's fraudulent intent might be negated by circumstantial evidence showing "that the debtor used [the creditor's property] openly, without attempting to conceal, and had reasonable grounds to believe he had the right to so use."

370 B.R. at 116-117 (quoting *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) and *In re Weber*, 892 F.2d 534 (7th Cir. 1989), *abrogated on other grounds by Grogan*, 498 U.S. 279, 111 S.Ct. 654) (other quotations and citations omitted).

The court concludes that the Plaintiff has not alleged enough facts to survive the Debtors' motion to dismiss the embezzlement claim against Mr. Morgan. As required by *Cash America Financial Services*, the Plaintiff has not alleged the first element. There is no allegation that Ms. Humphrey "entrusted" anything to Mr. Morgan. The property was entrusted to Mrs. Morgan. From a review of the Debtors' joint bank account records, it would appear that the second element is met. The Plaintiff has alleged that Mr. Morgan had access to the funds transferred from the Plaintiff's account into the joint account he held with Mrs. Morgan. *See* [Doc. Nos. 12-9 -12-22, Exs. G3 - G16 to the Amended Complaint]. Plaintiff alleges that those funds were used by Mr. and Mrs. Morgan for their expenses, not for expenses of Ms. Humphrey. The third element of fraud has been met as to Mrs. Morgan, but not as to Mr. Morgan. There are no allegations of his involvement in Mrs. Morgan's fraud other than his knowledge of his wife's fiduciary relationship. Although the Sixth Circuit has defined *fraud* so broadly that a specific representation or omission is not necessary, the allegations contain no specifics of Mr. Morgan's "deceit, artifice, trick or design." Having failed to allege specific facts supporting two of the three required elements, the court finds this claim should be dismissed. The Plaintiff fails to allege enough facts in her Amended Complaint to suggest that Mr. Morgan misused money that had been lawfully entrusted to him, not Mrs. Morgan, under circumstances suggesting fraud. Mr.

Morgan's motion to dismiss the 11 U.S.C. § 523(a)(4) claim based on embezzlement will be GRANTED.

### C.    Non-Dischargeability Pursuant to 11 U.S.C. § 727(a)(4)(A)

The Bankruptcy Code provides that a debtor shall receive a discharge from the court unless "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account; . . ." 11 U.S.C. § 727(a)(4)(A). Courts in this Circuit have determined that to state a claim pursuant to § 727(a)(4)(A), a plaintiff must demonstrate by a preponderance of the evidence the following five elements:

> (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) that the statement related materially to the bankruptcy case.

*Clippard v. Jarrett (In re Jarrett)*, 417 B.R. 896, 903 (Bankr. W.D. Tenn. 2009) (citing *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000)).

Statements made by a debtor in his bankruptcy schedules, his personal statement of financial affairs, and at 341 meetings are all statements made under oath. *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008) (citing *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999)) (other citations omitted). Whether a false statement under oath has been made pursuant to 11 U.S.C. § 727(a)(4)(A) is a question of fact. *In re Jarrett*, 417 B.R. at 903. The complaint alleges that Mr. Morgan signed his bankruptcy schedules under penalty of perjury on October 5, 2011. *See* [Bankr. Case No. 11-15547, Doc. No. 1, p. 5]. Parts 1 and 2 of the Debtors' Statement of Financial Affairs requests financial information regarding the two years preceding the year of filing, 2011. *See id.* at pp. 8-9. Specifically they state that his income was $35,156 in 2009, $49,381 in 2010 and $38,363 for the

first 10 months of 2011. For these same years the Debtors asserted they received no other income. *Id.* However, as described *supra*, the record indicates that Mrs. Morgan deposited $199,997.66 into their joint checking account on November 3, 2010. This income is never mentioned in the Debtors' bankruptcy schedules, nor is any other income allegedly received from Plaintiff's accounts ever mentioned.

The Debtors' schedules indicate that Mr. Morgan worked at Dixie Industries and received $3,405.78 in average monthly income. [Bankr. Case No. 11-15547, Doc. No. 1, p. 43, Schedule I]. His estimated "take home" pay was $2,633.80. *Id*. Mrs. Morgan listed no monthly income at all. Thus, the Debtors admitted on their schedules that they only received about $2,633.80 per month in employment income. The bank account statements attached to the Amended Complaint reflect deposits that greatly exceed that amount and that withdrawals were in excess of $100,000 all three years. *See* [Doc. Nos. 12-7 through 12-22, Exs. G-1 through G-16 attached to Amended Complaint]. Plaintiff has alleged sufficient facts to support her claim that Mr. Morgan made statements under oath and that that those statements appear to have been false.

As for knowledge and intent, circumstantial evidence or a debtor's course of conduct may be used to infer the debtor's intent. *Id.* However, a finding of fraudulent intent "is a question of fact that is highly dependent on the bankruptcy court's assessment of the debtor's credibility." *Roberts v. Debusk (In re Debusk)*, No. 3:08-cv-427, 2009 WL 1256891, at *4 (E.D. Tenn. May 1, 2009). An inference of deceitful intent may be found where the evidence demonstrates that a series or pattern of errors occurred. *See General Motors Co. v. Heraud (In re Heraud)*, 410 B.R. 569, 581 (Bankr. E.D. Mich. 2009). Here, there are allegations of substantial errors made in the disclosure of income for three years and the failure to disclose any income for Mrs. Morgan.

With respect to the third element of knowledge required to demonstrate a false oath or omission, " '[k]nowledge that a statement is false can be evidenced by a demonstration that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information.' " *Jahn v. Flemings (In re Flemings)*, 433 B.R. 230, 239 (Bankr. E.D. Tenn. 2010) (quoting *Gordon v. Courtney (In re Courtney)*, 351 B.R. 491, 506 (Bankr. E.D. Tenn. 2006)). The elements of knowingly and fraudulently must both be proven separately. *See Roberts v. Oliver (In re Oliver)*, 414 B.R. 361, 374 (Bankr. E.D. Tenn. 2009). The level of withdrawals from the joint bank account and the purchase of the residence alleged in the Amended Complaint when compared with Mr. Morgan's statements about his income provide sufficient facts from which the court may infer that Mr. Morgan had knowledge that his statements were false, if court takes the facts alleged in the Amended Complaint as true. *See* [Doc. Nos. 12-7 through 12-22, Exs. G-1 - G-16]. The statements show a wide variety of purchases and multiple purchases of food on the same day from which the court can infer multiple family members were accessing the account. Mr. Morgan thus benefited from the use of funds withdrawn from the Plaintiff's accounts. For example, the record shows that the Debtors' beginning balance in their joint checking account was $3,568.34 on October 23, 2010. [Doc. No. 12-17, Ex. G11 to Amended Complaint, p. 8]. The statement indicates that $199,997.66 in deposits were made with $178,646.04 in withdrawals, leaving a balance of $24,919.96 in the account on November 4, 2010. *Id.* The record reveals that Mrs. Morgan purchased the Jill Lane property on November 3, 2010, and according to their bankruptcy schedules, Mr. Morgan used the home as his residence. *See* [Doc. No. 12-6, Ex. F to Amended Complaint]; [Bankr. Case No. 11-15547, Doc. No. 1, p. 1]. The following bank statements indicate that significant amounts of money were spent at such places as furniture stores, restaurants, home improvement stores, household good stores, clothing

stores, and online music stores. *See e.g.* [Doc. No. 12-17 to 12-22, Exs. G11 to G16 to Amended Complaint]. In short, the Plaintiff has raised enough factual allegations pertaining to the issue of Mr. Morgan's knowledge that the family's spending practices were not consistent with the income he reported on his schedules.

With respect to materiality, the Sixth Circuit explained in *In re Keeney* how courts should analyze section 727(a)(4)(A) claims.

> The subject of a false oath is material if it " 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.' "

227 F.3d at 685-86 (citing *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)).  In addition, "[t]he concealment of a potential preference action clearly bears a relationship to the bankrupt's estate." *In re Flemings*, 433 B.R. at 241. The Plaintiff also alleges in her Amended Complaint that the Debtors failed to "list over $500,000 in income during the two years prior to the bankruptcy petition, and failed to list the amount actually transferred to their children in the one year preceding the bankruptcy petition." Amended Complaint, ¶ 16. In this case, Mr. Morgan's access to hundreds of thousands of undisclosed dollars in the years prior to his bankruptcy and the assets those funds purchased, the expenses paid, and the gifts made bear a significant relationship to his business dealings and the disposition of his property.

The court concludes that the Plaintiff's Amended Complaint alleges enough facts to survive the Debtors' motion to dismiss the 11 U.S.C. § 727(a)(4) claim against Mr. Morgan. Therefore, the Debtors' motion to dismiss the 11 U.S.C. § 727(a)(4) claim against Mr. Morgan will be DENIED.

### IV. Conclusion

As explained *supra*, the court concludes that the Plaintiff's claims against Mrs. Morgan

are moot as Mrs. Morgan has waived her discharge. Therefore, the Debtors' motion to dismiss the claims against Mrs. Morgan will be GRANTED. The Plaintiff's claims against Mrs. Morgan are non-dischargeable pursuant to Mrs. Morgan's waiver of her discharge. [Bankr. Case. No. 11-15547, Doc. Nos. 54-1, 60]. The court will GRANT the Debtors' motion to dismiss the claims alleged pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(4) against Mr. Morgan. These claims will be dismissed without prejudice. The court will DENY the Debtors' motion to dismiss the Plaintiff's claims alleged against Mr. Morgan pursuant to the 11 U.S.C. § 727(a)(4) claim.

      A separate order will enter.

# # #